The opinion of
 
 Justice
 
 Bradford, (which is all I have in my notes) entered fully into the principles of the decision as follows.
 

 
 *198
 
 Bradford. Justice:—
 

 The imprisonment of this infant if justified at all, must be supported under the Act of 1700, respecting servants; so that the only question for our determination is, whether he be a servant within the meaning of that ad of Assembly? 1
 
 Vol. Dall. Edit. p.
 
 13.
 

 It is clear that this indenture, by which the infant is bound to
 
 serve,
 
 and not to learn any trade, occupation, or labour, cannot be supported upon the principles of common law, nor by the express words of any statute. But, it is said, that it depends upon the
 
 custom of the country;
 
 and it is evident that suca custom is referred to in our laws. I have taken some pains to ascertain its origin and extent.
 

 This custom seems to have originated with the first adventurers to Virginia, and to have arisen from the circumstances of the Country. Persons desirous of
 
 coming to
 
 America, and unble to pay for their passage in any other way, shipped themselves and their children, as servants. If they were imported under indenture, those indentures were held good, and they were to serve according to their stipulation; but if there was no indenture, they were to serve according to the custom, to wit, five years, if of full age, or above seventeen; and if under seventeen, till they arrived at the age of twenty two, or in some places till twenty four. The early laws of
 
 Virginia
 
 and
 
 Maryland
 
 (some of them so early as 1638) speak of these servants thus imported: they are called,“ servants according to the custom “servants bound to serve the accustomary five years;” and sometimes are described as “servants sold for the custom.”
 

 These servants were in a very degraded situation. They were a species of property, holding a middle rank between Haves and freemen; they might be sold from hand to hand; and they were under the correction of laws exceedingly severe.
 

 It appears by all the early laws on this subject, that the custom extended to
 
 imported
 
 servants only; and it extended to all such as were imported, whether minors, or adults. The custom was founded on necessity; and it was thought to be mutually beneficial to the colony, and to the emigrant. But no such necessity existed as to the children who were already in the province. The custom, therefore, never extended to them; and there was in all the colonies, and particularly in Pennsylvania, a marked distinction between these two classes of minors. This is to be found in the articles of the laws agreed on in England, and more fully in the laws of 1682. These speak only of imported servants; and direct how long such servants, brought into the province without indentures, shall serve; but, in
 
 Chap.
 
 112, all parents and guardians in the province are enjoined to teach the children under their care to read and write, 'till they are twelve old, and
 
 that then
 
 they be instructed in some
 
 useful
 
 
 *199
 

 trade or skill.
 
 This policy of putting children out as
 
 apprentices,
 
 is carried into our poor laws, and those which relate to Overseers of the poor, and the Orphans Courts, have, no authority to bind out minors as
 
 servants,
 
 even such as are the objects of public charity. They must be bound apprentices to some
 
 “
 
 art, trade, occupation, or labour.”
 

 There have been instances of children here being bound out as servants; but this has not been general; and the Courts of Justice have always frowned on the attempts.
 

 I agree, that it is not necessary to determine how far a father may transfer to another, the right which he has to the service of his children, in consideration of that other’s instructing him in reading, writing, and the like; nor whether the Court would interfere to take the child out of such person’s custody. But, I think it right to say, that no parent, under any circumstances, can make his child a
 
 servant,
 
 in the sense in which this boy is held as such. Though he is intitled to the service of his child, he cannot enforced as a mailer can that of his servants; he cannot commit him to goal if he runs awa
 
 y,
 
 he cannot demand the penalty of five days service for every day of absence; and, therefore, it is impossible that he can transfer such right to another.
 

 I am, therefore, of opinion with the rest of the Court, that this boy is not a servant within the meaning of the Act of 1700 and consequently, he mull be discharged.