# CIRCUIT COURT, U. S.

## MASS. DISTRICT, BOSTON, JUNE 22, 1816.

United States
v.
William Bainbridge.
} HABEAS CORPUS.

Present—Hon. *Joseph Story*, J.

THIS was a habeas corpus to Commodore Bainbridge, to bring up the body of Robert Treadwell, an infant of the age of twenty years and about eleven months. By the return of the habeas corpus, and the other proceedings, it appeared that he was born at Ipswich, on the 2d day of August, A. D. 1795: that in the month of May, 1815, he enlisted into the navy of the United States, to serve two years; that soon after his enlistment he deserted from the service, and having been apprehended, was, on the 19th day of June, last past, brought to trial on the charge of desertion, before a regular court martial, and having pleaded guilty to the charge, was, by the sentence of the court, among other things, ordered to serve in the navy of the United States, the term of two years from the said nineteenth day of June, and to forfeit all the wages then due to him. He has a father who is still living, and now absent at sea; and previous to his departure sued out a habeas corpus for the liberation of his son; but it failed, from the return of the officer to whom it common soldier in the army, or a seaman in the navy for the benefit of the parent. The power to enlist minors, in the naval service is included within the power delegated to congress by the constitution, and they may, constitutionally, authorize the enlistment of minors against the consent of their parents. The enlistment of minors in the navy in pursuance of the laws of the United States is a personal contract, made by the infants themselves, for their benefit, and is therefore binding upon them.

*The father's right to his children, whether it results from the guardianship by nature or nurture, cannot now be brought into controversy. This right may be restrained or taken away when abused. The custody of the infant is for his benefit, and not for the parent's. The rights of the parent and infant depend upon the municipal rules of the state. It seems he cannot be compelled to enlist as a parent.*

BOSTON, June, 1816.

U. States
v.
Bainbridge.

whom it was directed, that the infant was not in his custody. It was alleged in the affidavits and petition that the enlistment was without the consent of his father.

The cause was argued by *Simmons*, in behalf of the petitioner, and *Aylwin* in behalf of Commodore Bainbridge.

*Story*, J. The first question is, whether the contract of enlistment, supposing it to have been made without the consent of the father, is valid, or not. By the common law, the father has a right to the custody of his children during their infancy. In whatever principle this right is founded, whether it result from the very nature of the paternal duties, or from that authority which devolves upon him by reason of the guardianship, by nature or nurture, technically speaking, its existence cannot now be brought into controversy. Exparte Hopkins, 3 P. W. 151. Co. Litt. 88., and Hargrave's notes. Rex v. De Manneville, 10 Ves. jun. 52. 1 Bl. Com. 452. 461. This right, however, is not unlimited; for whenever it is abused by improper conduct on the part of the parent, courts of law will restrain him in its exercise, and even take the custody permanently from him. Archer's case, 1 Lord Raym. 673. Rex v. Smith, 2 Stra. 982. Rex v. Delaval, 3 Burr. 1434. Commonwealth v. Addicks, 5 Bin. 520. By the common law, also, a father is entitled to the benefits of his children's labour, while they live with him, and are maintained by him; but this, (as has been justly observed,) is no more than he is entitled to from his servants. 1 Blac. Com. 453. It has also been asserted, that, by the same law, a father may bind his children as apprentices without their consent, and thereby conveying the permanent custody of their persons, as well as benefit of their labour, to their

masters, during their minority. Com. Dig. "Justices of the Peace," p. 55. But notwithstanding the aid of very respectable authorities, (Day v. Everett, 7 Mass. Rep. 145. Matter of Mc Dowles, 8 Johns. Rep. 328.) it may well be doubted if this doctrine can be supported to the extent in which it is laid down. The custody of minors is given to their parents for their maintenance, protection and education; and if a parent, overlooking all those objects, should, to answer his own mercenary view, or gratify his own unworthy passions, bind his child as an apprentice upon terms evidently injurious to his interest, or to a trade or occupation which should degrade him from the rank and character which his condition and circumstances might entitle him, it would be extremely difficult to support the legality of such a contract. See Rex v. Kepple, 2 Dall. 197. The King v. The Inhabitants of Cromford, 8 East. Rep. 25. And it would be a strong proposition to maintain, that a father might, in a time of war, upon the mere footing of the common law, enlist his son as a common soldier in the army or as a common seaman in the navy, without his consent, and compel him to serve, during the whole period of his minority, without a right to receive to his own use any of the earnings of his laborious and perilous course of life. In such a contract there would not be even a semblance of benefit to the minor. It is not, however, necessary to decide these points; and they are commented on merely in answer to some suggestions at the bar. Be the rights of parents, in relation to the custody, and the services of their children, whatever they may, they are rights depending upon mere municipal rules of the state, and may be enlarged, restrained, and limited, as the wisdom or policy of the times may dictate, unless the legis-

BOSTON,
June, 1815.

United States
v.
Bainbridge.

lative power be controlled by some constitutional prohibition.

The constitution of the United States has delegated to congress the power to "raise and support armies," and "to provide and support a navy," and independent of the express clause of the constitution, this must include the express power *to make all laws which shall be necessary and proper for carrying into effect the foregoing power.* It is certain that the services of minors may be extremely useful and important to the country, both in the army and navy. How many of our brilliant victories have been won by persons, on land and at sea, who had scarcely reached the age of manhood? In the navy, in particular, the employment of minors is almost indispensable. Nautical skill cannot be acquired but by constant discipline and practice for years in the sea service; and unless this be attained in the ardour and flexibility of youth, it is rarely at a later period the distinguishing characteristics of a seaman. It is notorious, that the officers of the navy generally enter the service as midshipmen as early as the age of puberty; and that they can never receive promotion to a higher rank, until they have learned, by a long continuance in this station, the duties and labors of naval welfare; and to this early discipline and experience, as much as their gallantry and enterprise, we may proudly attribute their superiority in the contests on the ocean during the late war. It cannot therefore be doubted, that the power to enlist minors into the naval service, is included within the power delegated to congress by the constitution, and that the exercise of the power is justified by the soundest principles of national policy. And if this exercise should sometimes touch upon supposed private rights or private convenience, it is

to be enumerated among the sacrifices which the very order of society exacts from its members in the furtherance of the public welfare.

The position asserted at the bar, denying congress the power of enlisting minors wirhout the consent of their parents, is not a little extraordinary. It assumes as its basis, that a granted power cannot be exercised in derogation of the principles of the common law ; a construction of the constitution which would materially impair its vital powers, and overthrow the best settled rules of interpretation. Can there be a doubt that the state legislature can, by a new statute, declare a minor to be of full age, and capable of acting for himself at fourteen instead of twenty-one years of age ? Can it not emancipate the child altogether from the control of its parents ? It has already in the case of paupers, taken the custody of the parents, and enabled the overseers of the poor to bind out the children as apprentices or servants during their minority without consulting the wishes of their parents. Act 26th Feb. 1794, sec. 4. It has, without the consent of the parents, obliged minors to be enrolled in the militia, and to perform military duties ; and although these duties are in time of peace but a slight interference with the supposed right of parents, yet they may in time of war expose the minors to the constant perils and labours of regular soldiers, and altogether deprive their parents of any control over their persons or services. In time of war, too, the state may, for its defence, establish and maintain an army and navy ; and it would be a strange and startling doctrine, that the whole youth of the state might, unless the consent of their parents could be previously obtained, be withheld from the public service, whatever might be the pressure of the public dangers or

BOSTON,
June, 1816.

United States
v.
Bainbridge.

necessities. And if the state legislature could, in their discretion, abrogate or limit the paternal authority, it might be for precisely the same reasons that the national legislature could do it; in that it was necessary or proper to carry into effect some other granted powers. It has been very justly observed, in a work of the very best authority, (The Federalist, No. 44,) that no maxim is more clearly established in law or in reason, than that whenever the *end* is required, the *means* are authorized; whenever a general power to do a thing is given, every particular power necessary for doing it is included. And I feel no scruple in affirming, that congress having authority to provide and maintain a navy, may constitutionally authorize the enlistment into the naval service of any minors, independent of the private consent of their parents: and the statutes passed for this purpose will be emphatical by the supreme law of the land. Nor is the exercise of this power novel in the institutions of that country from which we have borrowed most of the principles which regulate our civil and political rights. It has been pushed to an extent, which is not only odious, but has become in a great degree subversive of the personal liberty of a large class of meritorious subjects. Minors may not only be enlisted into the British navy, without the consent of their parents, but may be forcibly impressed into it, against the joint consent of their parents and themselves. And even aprentices, regularly bound by contract, are not, except in special cases, and for a limited time, prescribed by statute, exempted from the like impressment. The King v. Reynolds, 7 Term Rep. 479. The King v. Edwards, 7 Term Rep. 745. Exparte Softly, 1 East. Rep. 466. Ex parte Brocke, 6 East. Rep. 238. Stat. 13 Geo. 2. chap. 13.

Much has been stated in the argument in reference to what contracts infants are void, and what are voidable at common law. There is, in the books, considerable confusion on this subject, which has not been entirely removed by the learned discussions in Zouch v. Parsons, 3. Burr. 1794. The distinctions laid down in another case by Lord Chief Justice Eyre, seemed founded in solid reason, viz. that when the court can pronounce, that the contract is for the benefit of the infant, as for instance, for necessaries, then it shall bind him, when it can pronounce it to their prejudice, it is void ; and that where it is of an uncertain nature, as a benefit or prejudice, it is voidable only, and it is in the election of the infant to affirm it or not, Kean v. Boycott, 2 Hen. Blac. 511. It is a material consideration also, that the validity of the infant's act or contract is, in point of law, independent of the right of custody in his parent, although it may be an ingredient in ascertaining in point of fact, whether the act for contract be for his benefit or not. In short, the disabilities of an infant are intended by law for his protection, and not for the protection of the rights of third persons, and his acts may, therefore, in many cases, be binding upon him, although the persons under whose guardianship, natural or positive, he then is, do not assent to them. The privilege, too, of avoiding his acts or contracts when they are voidable, is a privilege personal to the infant, and which no one can exercise for him. Kean v. Boycott, 2 Hen. Blac. 511. And whenever any disability created by the common law, is removed by the enactment of a statute, the competency of the infant to do all acts within the purview of such statute is as complete as that of a person of full age. And whenever a statute has authorized a contract for the public service, which

BOSTON,  from its nature or objects is manifestly intended to be
June, 1816.  performed by infants, such a contract must, in point of
United States  law, be deemed to be for their benefit; so that when *bona*
v.  *fide* made, it is neither void nor voidable, but is strictly
Bainbridge.  obligatory upon them. I say *bona fide* made, for if there
be fraud, circumvention or undue advantage taken of
the infant's age or situation by the public agents, the
contract would not, in reason or justice, be enforced. It
would be strange, indeed, if courts of law could judicially
hold contracts to be void or voidable which the legislature
should deem salutary, or essential to the public interest,
or pronounce them invalid, because entered into by the
very parties who were within the contemplation of the law.

From these more general considerations, we may now
pass to the question, whether the laws of the United
States authorise the enlistment of minors, without the
consent of their fathers. All the acts, from the first es-
tablishment of the navy, authorize the employment of
midshipmen, who are invariably minors when they en-
ter the service: and all the acts since the statute of 30th
of June, 1778, ch. 81. including those now in force, un-
der which the present applicant has been enlisted and
held in service, in express terms authorize the President
to engage and employ "boys," in the ordinary duties
of the navy. In no one of them is there any provision
requiring the consent of parents or guardians, to their
engagements, or authorizing them to make it.  (See
the act 30th June, 1798, chapter 81.; of 24th April,
1806, ch. 36.; of 3d March, 1807, ch. 35.; of 31st Jan-
uary, 1809, ch. 78.; and of the 2d January, 1813, chapter
148.) The laws manifestly contemplate that it is a per-
sonal contract, made by the infants themselves for their
own benefit. They are entitled to the pay, the bounties

and the prize money, earned and acquired in the service. This is not denied in the argument; and if the laws be so, then they must, by necessary implication, give a capacity to infants to make such a contract, and, when made, to assert its legal validity. Upon any other supposition, the whole objects of the legislature would be defeated. For if the contract of the infant, made without the assent of his parent, were void or voidable, that assent could not, by the mere operations of the common law, change its character. A contract, voidable by the common law, cannot be confirmed or avoided by any assent or dissent of the parent thereto. It is binding or not, solely by the election of the infant himself; and if the contract be void, it is incapable of being set up by any person to suppose that the legislature meant to authorize an infant to enlist in the navy, and yet that contract should be voidable at his election, would be to suppose that it meant to repeal the rules and articles of the navy in his favor; and enable him to desert, when his services were most important to the public.

If, indeed, the acts of congress had authorized parents or guardians to bind their minor children to an apprenticeship, or servitude in the navy, a valid contract might then have been made by such parents or guardians. But there is no such authority in the acts; nor am I satisfied that it ever existed at the common law; and if it ever did, the statute of Massachusetts, of the 29th of February, 1795, chapter 64, seems to have restrained the exercise of that power, to the cases and the manner specified in that statute. A different doctrine has, indeed, been held, but it seems to me extremely difficult to be maintained. Day v. Everit, 7 Mass. Rep. 145. And in a

case depending upon similar principles of construction, the opposite doctrine has been established in another court. Ex parte, McDowle, 8 Johns' Rep. 253.

Upon the whole, as congress have authorized "boys" to be engaged in the service of the navy, without requiring the previous consent of their parents to the contract of enlistment, that contract, when fairly made, with an infant of reasonable discretion, must be deemed to have a semblance of benefit to him, to be essential to the public welfare, and therefore binding to all intents and purposes; and if it were not so binding, but were avoidable, even the consent of parents could not infuse into it any farther validity. This construction of the acts respecting the naval establishment, is confirmed by the general practice in that department; and by the consideration, that in the acts respecting enlistments in the army, a proviso was, for a long time, inserted, "that no person under the age of 21 years, should be enlisted by any officer, or held in the service of the United States, without the consent of his parents, guardian or master, first had and obtained, *if any he have.* See the act of 16th of March, 1802, ch. 9.; of 11th January, 1813, chap. 154. And at length, the necessities of the public service were such, that the enlistment of minors over eighteen years of age into the regular army, was expressly authorized; and the proviso of the act of the 30th of January, 1813, ch. 154., which required the previous consent of their parents, guardians, or masters, was expressly repealed by the act of the 10th of December, 1814, chapter 10. This course of legislation manifestly shows, that, whenever the rights of parents were intended to be saved, a special proviso was uniformly introduced for that pur-

pose. The decisions of two very respectable state courts, which have been cited at the bar, so far as they go, proceed on the same principles, which have been adopted by this court, and are entitled to great weight. Commonwealth v. Murray, 4 Bin. 487. Ex parte, Emanuel Roberts, 2 Hall's Law Journal, 192. The decisions of our own state court, which have been cited on the other side, are inapplicable, for they turn altogether upon the meaning and extent of the proviso, in the army act of 1813, ch. 154. It is not now necessary to consider how far a state court has jurisdiction to discharge a person, who, by the return of the habeas corpus, is shown to be enlisted under a contract with the United States. Whenever that question shall arise, it will deserve very grave consideration. See Ex parte Roberts, 2 Hall's Law Journal 192.; Ferguson's case, 9 Johns' Rep. 239. But with great deference to the learned judges, I have never been able to bring my mind to assent to the construction put upon the act of 1813, in some of the cases in the Mass. Rep. Commonwealth v. Cushing, 11 Mass. Rep.

The view which has been taken, upon the general question, as to the validity of the contract of enlistment, renders it necessary to consider the second point made in this case, viz. how far an infant can, by disaffirming his contract of service, avoid the punishment which has been regularly adjudged against him by the sentence of a court martial, for a crime committed against him : the whole proceeding and sentence having been pronounced while the contract was in force. If it had become necessary in this case to ascertain whether there had been any consent of the father, I should have thought it necessary to have required more explicit affidavits than have

been made, and a peremptory denial of assent on the part of the father, as well as a special statement of facts, as to the mode of life and place of residence, of the minor, previous to the enlistment. For an assent of the father need not be expressed, but may be implied from circumstances.

If a father should voluntarily send his minor children away from home, to obtain a maintenance, or support in any manner that they could, this would be an implied consent to any contract, for that purpose, into which they should enter, and a waiver of his parental rights. It is upon this ground, that the ordinary retainer of servants who are minors, are held valid, against the subsequent acts of the father. In strictness of law, the contract of the minor, in such cases, becomes obligatory, because, being exiled from his father's house, whatever contract he forms, is, in an enlarged sense, necessary for his support, maintenance, and education. I am of opinion, that Robert Treadwell, the minor, ought to be remanded to the custody of his commanding officer.

It was the opinion of the district judge, (Davis,) that the consent of the parent or guardian, where there is one, is necessary, either express or implied, to authorize the engagement of a minor in the naval service ; but he concurred in the order, to remand the said Robert to the custody of his commanding officer, on the special circumstances of the case.