## Van Dorn vs. Young.

Where the parties to a contract for the apprenticing of an infant bound themselves, *so far as it was in their power*, to see such contract fulfilled; *Held* that it was the intention of the parties to limit their respective obligations to their legal ability to perform their several undertakings; and to be bound so far as it depended upon their own acts, or their legal control over the minor, but no further.

But where the minor, thus apprenticed, left and abandoned the service of his master, after having been in his employ some years, under the contract, and refused to work for him any longer; *Held* in an action by the master, against the father, for such breach of the contract, that the defendant was bound to do what he had the legal power to do, in order to effect the return of his son; and that an allegation in the complaint that he had not used *any* endeavors, and refused to do any thing, sufficiently showed a breach of his obligation.

A father may bind himself that the services of his infant child shall be rendered to another, during the period for which he is by law entitled to them, for instruction to be rendered to the child, and in addition a compensation to be paid to himself.

DEMURRER to complaint. The action was founded upon a contract of which the following is a copy as set forth in the complaint. "We, the undersigned, bind ourselves, so far as it is in our power, to see the following contract fulfilled. I, John G. Young, on my part, that my son Henry shall work as an apprentice to Frederick Van Dorn five years from the first day of November, in the year 1846; that the said Henry shall be a good, faithful, and obedient apprentice. That he shall comply with the rules and regulations of said Van Dorn's house and shop, so far as such rules are common in well regulated shops. The said Young further agrees to board the said Henry three months from the above date free of charge. I, Frederick Van Dorn, on my part, do agree to learn said Henry Young the art of graining in all its various parts I am acquainted with, and to give him all the information and receipts for mixing colors, &c. necessary to make him a good workman at the business. I, F. Van Dorn do further agree to learn the said Henry the art of sign painting in its various parts, and to give him all the information and receipts necessary to make him a good workman. I, F. Van Dorn further agree to pay to the said John G. Young, or his order, the following sums, and at the times there men-

tioned, viz : At the end of the first three months above mentioned, five dollars; after the first three months above mentioned, I, F. Van Dorn, agree to board said Henry and do his washing and ordinary mending, the balance of the time of five years, after the three months above mentioned, and to pay the following sums : the second year thirty dollars; the third year forty dollars ; the fourth year fifty dollars ; the fifth year sixty dollars. The above yearly sums will become due one-fourth at the end of each quarter. In addition to the above I agree to pay fifty dollars at the end of the five years above mentioned. In witness whereof, we have hereunto set our hands and seals, this first day of November, 1846.

JOHN G. YOUNG.　　[L. s.]

In the presence of　　FREDERICK VAN DORN. [L. s.]
　　Geo. F. Van Dorn."

It was alledged in the complaint that Henry was an infant, sixteen years of age, and this contract extended to a period of five years or his majority. That by order of the defendant he entered the service of the plaintiff, on the day of the date of said contract, and remained until July, 1850, when he voluntarily left, and refused to work for the plaintiff any longer. That the plaintiff informed the defendant thereof, who did "nothing in the premises towards returning said Henry to such service." That during the year before he left, Henry became careless and negligent in the performance of his work, of which the defendant was informed, but he nevertheless, "did little or nothing to remedy the conduct, negligence, &c." of said Henry. It was also alledged that before he left the plaintiff's service, Henry had become a very good workman at the business in which he was engaged, and could perform his work well, if so disposed; and that his services, provided he faithfully fulfilled the agreement of the defendant, were worth to the plaintiff one dollar and twenty-five cents per day. The plaintiff then demanded judgment against the defendant, for his damages, sustained in consequence of the defendant's breach of the contract, to the amount of $450.

Van Dorn *v.* Young.

*J. Abrams* and *J. D. Husbands,* for the plaintiff. I. The plaintiff having averred, in the complaint, a strict and faithful performance of the contract on his part, the defendant by demurring admits the same. The demurrer being general, and not special, unless the complaint is totally bad, the demurrer cannot be sustained. (4 *How. Pr. Rep.* 98. 5 *Id.* 390. 6 *Barb.* 147. *Code,* §§ 142, 145.) II. A contract having been entered into between the parties, and the performance of the same entered upon, a breach thereof, or a wanton abandonment of the same on the part of the defendant, makes him liable to respond in damages; and whether the damages be little or much, the plaintiff is entitled to recover; and if so entitled, he should have judgment on the demurrer. (*Van Rensselaer* v. *Jewett,* 2 *Comst.* 135. 4 *Id.* 138, 411. *Goulding* v. *Hewitt,* 2 *Hill,* 644. *Cowen & Hill's Notes,* 450, 466. 3 *Bl. Com.* 397.) III. There was a breach of the contract on the part of the defendant, and a total abandonment of the same by him, without any fault on the part of the plaintiff. IV. The total abandonment of the contract by the defendant not only entitles the plaintiff to damages up to the time of the commencement of this action, but for prospective damages, for the time the contract had yet to run. (*Fish* v. *Folley,* 6 *Hill,* 54. *Tallman* v. *Coffin,* 4 *Comst.* 138. 7 *Hill,* 69 to 75. *Beebe* v. *Johnson,* 19 *Wend.* 500. *McNish* v. *Coon,* 13 *Id.* 26. *Mead* v. *Billings,* 10 *John.* 99. *Beach* v. *Crain,* 2 *Comst.* 87.) V. In an action on contract, if a sum certain is stated in the complaint, it is no cause of demurrer. (4 *How. Pr. Rep.* 48.)

*Geo. F. Danforth,* for the defendant. I. The contract is executory, and is qualified or conditional; the ability or power of the defendant to perform being a condition precedent to the right of the plaintiff to bring this action. The words "so far as it is in our power," &c. are qualifying words, as much so as if it had been said, upon condition, &c. They restrain the liability of the defendant, and make it incumbent upon the plaintiff to show the ability of the defendant to perform or keep the agreement. The words so far as, &c. in this contract refer not

Van Dorn v. Young.

to the power of either party to bind himself; for that is unrestricted, and if so applied would be senseless and absurd. They refer rather to the extent, or degree of liability, and in this application are sensible and provident, and cannot be disregarded. The parties are contracting in reference to the services of a third person who is in no way bound by the contract, and who cannot be compelled to perform. (2 *Kent's Com.* 363. 2 *R. S.* 218, § 26, 3d ed.) It was held in *Day* v. *Everett,* (7 *Mass. Rep.* 145,) that a contract for the services of a minor by a parent, was good; but the statute in Massachusetts is unlike our statute, which declares such contracts void. (2 *Kent's Com.* 204. 2 *R. S.* 218, § 26, 3d ed.) This invalidity of the contract, so far as the subject of it was concerned, may well have led to the insertion of these restrictive and qualifying words, and we are not allowed to overlook this circumstance in determining this contract. (*Wilson* v. *Troup,* 2 *Cowen,* 195.) It shows the importance of these words of qualification. For without them, the defendant would be bound, although the performance of the contract was prevented by inevitable accident, or other contingency, not foreseen by, or within the control of, either party. (*Chit. on Contracts,* 736, 745, 740. *Beebe* v. *Johnson,* 19 *Wend.* 502, *and cases cited.*) And the plaintiff, although he had no power to compel the apprentice to remain and receive the benefit of the contract, would still be liable to the defendant for his, the plaintiff's, non-performance. If the construction contended for is approved, and these words held restrictive, it seems plain that the defendant is not liable, unless it appears that he himself defeated the contract, as by encouraging his son to leave the plaintiff's service; or, at least, that having the power to compel performance, he failed to exert it. And so the plaintiff seems to have understood the contract; for he avers performance on his part, " so far as the circumstances of the case and the conduct of said Henry would admit," seeking excuse from full performance upon grounds which furnish no excuse, provided this is an absolute and unqualified agreement; because it cannot be ascertained but that by the exercise of greater patience, the offer of reward to the boy, the exercise of power or other means,

he could wholly perform his part of the contract; and to bring the case within the rule of dispensation, it must appear that the thing to be done cannot by any means be accomplished. (3 *Com. Dig.* 93, *Condition, D.* 2. 19 *Wend.* 502.)

II. The complaint is defective, because it does not show any breach of contract by defendant. It does not appear that he did any act whatever to violate his engagement; or that having power to compel his son to continue in service, &c. he failed to exert it. In the absence of such, or similar averments, he is aided by the presumption in favor of the performance of duty, rather than its violation. But the complaint itself shows that the defendant required the minor to labor for the plaintiff in pursuance of the contract; and as it shows no act to the contrary, or effort to induce the child to leave, or even a knowledge of his existence, or place of escape, or abode, it ought to be inferred that the same disposition which had impelled the father to enter into the contract, and upon its execution, remained, and that the power to enforce it alone was lacking. The alledged breach seems to be a general non-performance by the defendant; but the allegations at folios seven and eight, show this to be untrue, and it is repugnant to the allegations at folio six, which show a performance during nearly four years. The complaint charges the apprentice with inattention and unsteadiness generally, which is insufficient, and in particular with going to the theater at night. This is no breach. (3 *Car. & Payne,* 583.) But the plaintiff does not alledge that the defendant was able to compel the boy to do otherwise; and inasmuch as the father parts with all control over the son, to the master, no inference can help the plaintiff, growing out of the relation between the apprentice and the defendant; and the plaintiff himself, after averring thus generally the bad conduct of the boy and notice to the parent, leaves the inference that the defendant did something to remedy the evil, when he alledges that he did little or nothing. This is an insufficient allegation; he may have done all in his power to do.

III. The plaintiff has not alledged performance or readiness to perform on his part, or any excuse for non-performance, as

was necessary. (*Chitty's Pl.* 324.) He alledges that he performed it " as far as the circumstances of the case and the conduct of said Henry would admit." He should have set forth the particular circumstances which prevented him from performing. (1 *Chit. Pl.* 325. 8 *Wend.* 399.)

IV. The contract is void for want of mutuality. Young covenants that his son shall work for Van Dorn five years; but there is no covenant or agreement on the part of Van Dorn to retain him in his service. (*Chitty on Cont.* 15, 5*th Am. ed.*)

V. The contract is unauthorized by either statute or common law; it contravenes public policy and the interest of the state, and is therefore void. The revised statutes, (2 *R. S.* 214, 3*d ed.*) prescribe certain formalities which shall be observed by the parties entering upon the contract of apprenticeship, and which are for the benefit and protection of the infant, and in some measure compensate him for the loss he sustains in leaving his parents' care and being deprived of the benefit and protection of home. The binding must be by the apprentice, and in writing. (§ 1.) Consent must be given by the father, (§ 2,) at the end of or indorsed upon the indenture. (§ 3.) No indenture or contract for the service of any apprentice shall be valid as against the person whose services may be claimed, unless made in the manner before prescribed, (*Id.* 218, § 26, 3*d ed.*) and various subsequent provisions give a remedy to the master and to the apprentice for the violation of the contract. It will not be claimed that the contract in question is a good contract under the statute. It cannot be claimed that the contract is in any sense or degree binding upon the infant. It cannot be maintained that the infant has in any manner, or has at any time, assented to this contract; if such assent could help the plaintiff, which we deny. (3 *Barn. & Ald.* 583.) The complaint shows that he entered the service of the plaintiff by the order of the defendant, and left at his own will; and the defendant contends that the contract is invalid. 1st. Because it is not made in conformity to the statute. 2d. Because it is an attempt to contravene the policy of the statute, and is void; although the statute contains no express prohibition of such attempt.

Van Dorn *v.* Young.

(*Chitty on Cont.* 673, *and cases cited under note* 1.)   The contract in this case is the sale of the child's labor.   It contains no provision for his benefit, save the benefit of work.   The father, by it, throws off the obligation of maintenance and education; and secures by it, to himself, pecuniary profit.   Nor can the contract be sustained by the common law.   A father may, indeed, have the benefit of his child's labor; but this is only while the child lives with and is maintained by him, and is no more than he is entitled to from his apprentices or servants.   (1 *Black. Com.* 363.   3 *Barn. & Ald.* 584.)   He has no property in his child.   His right to its labor grows out of and is dependent upon his care over it; and is intended as a just compensation, not a source of pecuniary profit.   His dominion is not absolute.   The case of the McDowles, (8 *John.* 328,) would seem to hold that, although the infant is not bound, yet the father would be, upon his agreement.   This case is peculiar.   The infant was to be well taken care of; his welfare studiously provided for.   He desired to stay with his master; but his father forcibly took him away.   It was also provided in his contract that the infant might leave when he pleased.   The full force of this case is allowed when the defendant is held liable for acts of malfeasance; or if it was alledged that he persuaded the boy to leave, &c. and shut his mouth against complaint, if the boy chose voluntarily to remain; but nothing further, respecting this case.   Justice Cowen (3 *Hill*, 411) says: "It need not be denied that a father may, even at common law, bind out his child to an apprenticeship, as this court seems to have thought in the matter of McDowles." Here, again, is a narrow exception; the principle of which should never be extended to any other case.   The exception itself was so very doubtful, that a statute was deemed necessary for conferring a right on the parent, even to this extent; and Kent (2 *Kent's Com.* 263) says: The later cases say the father has no authority at common law to bind his infant son an apprentice without his assent.   The contract is also void, as being against public policy and the interest of the state.   (10 *Verm. Rep.* 344.) The welfare of every community is directly and deeply affected by the education of the child.   The law of nature has placed

Van Dorn v. Young.

the duty of maintaining and educating him in the hands of the parent; and this natural duty is enforced in all civilized nations. To promote this, the father is entitled to the control and services of his child. Under this domestic jurisdiction the child learns obedience to authority, and thus in the small community of home, is prepared for citizenship in the state. But though for many purposes under the dominion of the father, the child is not absolutely so. The father may forfeit those rights; and the law recognizes the existence of the child, and extends its protection over it. So the child owes to the state allegiance; in return for which, and by its duty of protection, and in promotion of its own interests, the state, by its laws, consults the welfare, comfort and interest of the child in regulating its custody during the period of its minority. (25 *Wend.* 103.) The common law leaves it in the parent; and it is only by virtue of the statute, that he can dispose of its custody at all. The statute, therefore, which enables him to do this, also protects the child against injustice, and provides a mode by which the contract may be terminated. (2 *R. S.* 219, § 32.) No such provision or protection exists in this contract. No act of Van Dorn's, however injurious to the child or to his rights or welfare, would release the defendant from his obligations under it. Van Dorn might be liable to an action; but if the contract is good, no abuse or cruelty to the child, unless it prevented service, would discharge the contract. (2 *Pick.* 456.) Nor on the other hand, if this contract is absolute, would any act or default of the child, excuse Van Dorn from the fulfillment of the contract on his part. Thus the child, on the one hand, may be exposed to cruelty and oppression from the master and have no refuge, for the father's interest is in his servitude. Pecuniary gain on one hand, pecuniary loss on the other. It has been declared that "the law goes further than merely to annul contracts when the obvious and avowed purpose is to do or cause the doing of unlawful acts; it avoids contracts and promises made with a view to place one under wrong influences; those which offer him a temptation to do that which may injuriously affect the rights and interests of third parties." (*Fuller* v. *Dame*, 18 *Pick.* 481.) Within this

Van Dorn *v.* Young.

rule, this contract should be annulled.   It holds out the strongest of all temptations to a parent, to dispose of the services of his child, and its custody, to unfit persons, and without regard to its rights, to secure to himself pecuniary gain.   For this gain, it is contended, he cannot barter away the duties which he owes to the child and the state, or shift in any way the relations which nature has imposed on him.   He cannot appoint another to fulfill his trust.   This contract seeks to do so.   The law will not enforce a contract founded on a breach of duty, and the attempted violation of the most important trust.   (2 *Yerg. Tenn. Rep.* 546.   4 *Leigh,* 493.   10 *Verm. Rep.* 338.)   The circumstance that the complaint against the legality of the contract on the grounds of public policy is made by the defendant, who is a party to it, is of no consequence; for the relief is given in regard to the interest of the public, and not on account of the individual.   (8 *Paige,* 67.)

*By the Court,* T. R. STRONG, J.   It was evidently the intention of the parties, by the introductory clause in the contract, expressing that the parties bound themselves so far as it was in their power to see the contract fulfilled, to limit their respective obligations to their legal ability to perform their several undertakings.   Both parties doubtless understood that the contract would not be binding upon the minor son of the defendant; that he could not be compelled to work, or pursue a course of good conduct, or receive instruction, except so far as the parental authority of the defendant might be effectual for that purpose; and each appears to have been unwilling to contract beyond his own acts and authority.   So far as it depended upon themselves, or their legal control over the minor, they would consent to be bound, but no further.   Without such a limitation the defendant would have incurred a liability to respond in damages for an abandonment by the son of the plaintiff's service, or his ill conduct, notwithstanding it was entirely beyond the power of the defendant to prevent it.   When a contract is absolute, if the thing to be done can by any means be accomplished, although it may be out of the power of the obligor to do it, he is liable in

damages for its non-performance. (*Beebe* v. *Johnson*, 19 *Wend.* 500.) That clause was probably introduced mainly for the benefit of the defendant; whether it was necessary in respect to the plaintiff it is not important to consider. (*Hughes* v. *Humphreys*, 6 *Barn. & Cress.* 680.)

This construction of the contract, in regard to the extent of the obligations imposed by it, is in accordance with the position taken by the counsel for the defendant on that subject; and he contends that giving the contract such a construction, no breach of it by the defendant is shown by the complaint. The breach alledged is, that the son, after having been in the service of the plaintiff, under the contract, about three years and a half, left and abandoned said service, and has not returned, and that the defendant "has not used any or his best endeavors to have the said Henry serve the said plaintiff as such apprentice," &c. "but the defendant has neglected and refused to fulfill said agreement," &c. ; that the plaintiff has repeatedly informed the defendant of the absence of the son from such service, and his neglect and refusal to return, &c. "but the said defendant turned away from said plaintiff and refused to hear his complaints, or do any thing in the premises towards returning said Henry to such service and apprenticeship, or in any way to carry out or fulfill said agreement," &c. It is not expressly alledged that the defendant had notice where his son was, after he left the plaintiff, or of his intention to leave; nor are any facts stated in reference to what might have been done by the defendant; but the court will take notice of his power as a parent, and cannot fail to see that he might have done *something* towards securing a return of his son, by making search for him, if ignorant of his residence, and on finding him exercising parental authority over him to effect his return. The defendant was bound to do what he had the legal power to do, in the premises. The allegations that he had not used *any* endeavors, and refused to do any thing, sufficiently show a breach of his obligation.

There is no force in the objection that the plaintiff has not alledged performance or readiness to perform on his part. The covenants are independent, and no such allegation was neces-

sary. (*Powers* v. *Ware*, 2 *Pick.* 451, 456.) Nor is there any want of mutuality in the obligations of the parties. (*Eno* v. *Woodworth*, 4 *Comst.* 249.)

The point mainly relied on by the defendant is that the contract was unauthorized by statute, or common law, and is void as contravening public policy. It certainly was not within the statute in relation to apprentices and servants, (2 *R. S.* 154,) and there is no statute expressly conferring the power to make such a contract. The contract never had any binding obligation upon the minor. (*Id.* 158, § 26. 2 *Kent's Com.* 264, 4th ed. *Matter of McDowles*, 8 *John.* 329.) But is there any principle or authority which forbids a father's binding himself that the services of his infant child shall be rendered to another, during the period for which he is by law entitled to them, without regard to the length of time, for instruction to be rendered to the child, and in addition a compensation to be paid to himself? This obligation, imposed as well by municipal law as by the laws of nature and religion, to maintain and educate the child, is in no respect diminished by such a contract; there is nothing in a fair contract of that character inconsistent with the proper discharge of that obligation; and the parental duty may often be better discharged in that way than in any other. What prejudice can result to the child or the public which might not be more frequently and certainly anticipated from denying than allowing the power to make such an arrangement? It is not perceived that any objection in principle to the possession of such a power by the parent exists; and there is clearly nothing in the contract in the present case which can furnish any occasion for complaint. The authorities upon this question are also against the defendant. In *Day* v. *Everett*, (7 *Mass. R.* 154,) which was an action of covenant upon an indenture whereby the plaintiff agreed that his son should serve the defendant for the term of six years, and the defendant covenanted among other things that he would pay the plaintiff $10, on the execution of the indenture, $40 on a subsequent day, and at the expiration of the term $50—the breach assigned being the non-payment of the $50— on demurrer to the declaration, Parsons, chief justice, who de-

---

Pratt *v.* Gulick.

---

livered the opinion of the court, said "There is no question but that a father who is entitled to the services of his minor son, and for whom he is obliged to provide, may at the common law assign those services to others for a consideration to enure to himself. He may contract that his minor son shall labor in the service and employment of others for a day, a month, or any longer term, so that the time do not exceed the period of the child's emancipation from the father, which may take place as well on the father's death as on the son's arriving at the age of twenty-one years." That case is cited and the doctrine recognized as law in *Butler* v. *Hubbard,* (5 *Pick.* 250.) In the *Matter of McDowles,* (8 *John.* 328,) an indenture of apprenticeship for six years, which was held invalid as to the infant, was held binding upon the father. (*See also United States* v. *Bainbridge,* 1 *Mason,* 71, 78 ; *Respublica* v. *Keppell,* 2 *Dall.* 197 ; *Commonwealth* v. *Baird,* 1 *Ashmead,* 267 ; *Commonwealth* v. *Moore,* 1 *Browne,* 275 ; *Commonwealth* v. *Addecks,* 5 *Binney,* 520 ; *Ex parte Crouse,* 4 *Wharton,* 9 ; 1 *Bouvier's Inst.* 137 ; *Cuming* v. *Hill,* 3 *Barn. & Ald.* 59.)

The demurrer must therefore be overruled, with leave to the defendant to answer on payment of costs.

[CAYUGA GENERAL TERM, June 7, 1852. *Selden, Johnson* and *T. R. Strong,* Justices.]