IN THE

# SUPREME COURT OF TENNESSEE

FOR THE

EASTERN DIVISION.

KNOXVILLE, SEPTEMBER TERM, 1917

KENNETH B. KENNER *v.* MARY NICE KENNER.

(*Knoxville.* September Term, 1917.)

CONSTITUTIONAL LAW. Parent and child. Rights of parent. Due process of law.

A father has no property right in a child, and a claim that he was deprived of his property without due process of law and without compensation in violation of·Const. U. S. Amend. 14, in that by losing its custody in divorce proceedings where he ·was not personally served with process he was deprived of its services, cannot be considered, although a parent is entitled to damages for value of services of a child unlawfully restrained or injured, and is·also entitled to the child's earnings, but cannot compel it to do service for another.

Cases cited and approved: Barry v. Mercien, 5 How., 103; De Krafft v. Barney, 2 Black, 704; McKelvy v. McKelvy, 111 Tenn., 388; Respublica v. Keppele, 2 Dall., 198; Cloud v. Hamilton, 30 Tenn., 104; Tennessee Mfg. Co. v. James, 91 Tenn., 154; Stewart v. Rickets, 21 Tenn., 151; Stringfield v. Heiskell, 10 Tenn., 546; Burke v. Ellis, 105 Tenn., 702; Ex Parte Burrus, 136 U. S.,

(700)

586; Pennington v. Bank, 243 U. S., 269; De La Montanya v. De La Montanya, 112 Cal., 101.

Code cited and construed:   Secs. 4321-4336 (T.-S.).

FROM SULLIVAN.

Appeal from the Chancery Court of Sullivan County.—Hon. Hal H. Haynes, Judge

Opinion on petition to Rehear

L. D. SMITH, C. W. MARGRAVES and S. F. POWEL, for appellant.

H. H. SHELTON and HARR & BURROW, for appellee.

MR. CHIEF JUSTICE NEIL delivered the opinion of the Court.

The point chiefly stressed is that by the decree in the Alabama suit the complainant was deprived of his property without due process of law, in violation of the Fourteenth Amendment to the federal Constitution, in that by it he was deprived of the services of his child, without having been made a party by personal service of process.

The contention, although put forward with the utmost seriousness, has nevertheless an element of unconscious humor; for it is impossible to perceive how a girl baby less than two years old can perform any services of pecuniary value.

The real ground depended on, we assume, is that the complainant, by the deprivation of present custody, has lost the possibility of enjoying future services when the child shall have grown old enough to render any, in case it shall live so long. But, as pointed out in, the original opinion, there is not necessarily any permanent deprivation, even of custody, since the power to change the custody remains in the Alabama court whenever it shall deem the interests of the child require such change.

Is the right of custody, aside from the child's ability or inability to perform services, such a property right as the Fourteenth Amendment was designed to protect? It is not a right of property. *Barry* v. *Mercien,* 5 How., 103, 12 L. Ed., 70, 78; *De Krafft* v. *Barney,* 2 Black. (67 U. S.), 704, 17 L. Ed., 351, 352. The father is the natural guardian, but for nurture only. Differently phrased, he is a trustee for the child, to protect, and rear, and train it for the duties of life. Incidentally, arising out of the duty of nurture, maintenance, and education, he is entitled to its reasable services. *McKelvy* v. *McKelvy,* 111 Tenn., 388, 77 S. W., 664, 64 L. R. A., 991, 102 Am. St. Rep., 787, 1 Ann. Cas., 130. But he has no property right in the child. He cannot compel it to do service for another. *Respublica* v. *Keppele,* 2 Dall., 198, 1 L. Ed., 347. The cases of *Cloud* v. *Hamilton,* 11 Humph. (30 Tenn.), 104, 53 Am. Dec., 778, and *Tennessee Manufacturing Co.* v. *James,* 91 Tenn., 154, 18 S. W., 262, 15 L. R. A., 211, 30 Am. St. Rep., 865, are not opposing authori-

ties. In these cases there was no involuntary servitude enforced upon the child. Nor do we think such servitude is approved in *Stewart* v. *Rickets,* 2 Humph. (21 Tenn.), 151. And see *Stringfield* v. *Heiskell,* 2 Yerg. (10 Tenn.), 546. These were cases arising on apprenticeship, however, in which institution perhaps it may be said a schooling for the child is provided. However, it is to be noted that the sections of the Code, enacted after the decision in *Stewart* v. *Rickets,* purporting to deal with the whole subject, make no provision for the binding of a child to apprenticeship by the father. Shannon's Code (Thompson Ed.), sections 4321-4336. If any service for another be in fact performed by a child, if there be no emancipation of the child, the compensation belongs to the father. *Burke* v. *Ellis,* 105 Tenn., 702, 710, 58 S. W., 855. It is also true that, if the father be unlawfully deprived of custody, he may, after a judgment of restoration, obtain compensation for the reasonable value of the child's services during such unlawful restraint. It is also true that, where the child, in the father's custody, is wrongfully injured by another, the father may enforce against such wrongdoer his demand for the reasonable value of the child's services during the the disablement. But this right is dependent upon the right of actual custody. If he has lost the custody, and is compelled to seek the aid of a court to regain it, the question will be decided with a view to the best interests of the child. The matter of custody is the real right involved in such cases, and not the de-

pendent or incidental right to services. But, as stated, the right to the custody of a child is not a property right, nor a right to the custody or control of property. If property, it could not be taken without compensation. Yet all will agree that the father, by the judgment of a court, may be lawfully deprived of the custody of his child without any compensation. The custody may be confided to the mother, where the married pair are living apart, or in disposing of a divorce suit between them, or to a grandfather, or grandmother, or even conferred upon a stranger, if such course be demanded by the child's welfare. This is frequently done under juvenile court acts. What has been said indicates, as we think soundly and truly, how foreign to the relation is any idea or theory of property in the child.

Indeed, the controversy arises solely out of the domestic relation. These matters are regulated by the States, not by the federal government (*Ex parte Burrus*, 136 U. S., 568, 10 Sup. Ct., 850, 34 L. Ed., 500); and they are regulated not on any theory of property, but rest, fundamentally, on the inherent police power of each of the States. It is true that domestic relations may occasionally fall within the sweep of federal power, but only because, as in the case of *Haddock* v. *Haddock*, cited in the original opinion, a judgment of a State court in respect thereof raises a question under the federal Constitution or laws.

Kenner v. Kenner.

In addition, it clearly appears, as stated in the original opinion, that the child was taken to Alabama by its mother, and kept there by her during the whole time she was acquiring her domicile in that State. When the divorce bill was filed, after the acquisition of domicile, the child was still in Alabama, and this fact was brought to the attention of the Alabama court in the bill which she filed and in which she prayed that its custody be decreed to her. The child was thus under the jurisdiction of that court, and of no other, just as completely as would be the property of a nonresident found within the jurisdiction, and brought within the control of the court by attachment, as was done in the case of *Pennington* v. *Bank,* 243 U. S., 269, 37 Sup. Ct., 282, 61 L. Ed., 713, L. R. A., 1917F, 1159, in which a judgment for alimony was sustained, to the extent of the property attached, against a nonresident of the State brought in only by substituted service. There is no means of attaching a child, but when the mother has personal custody of it, and brings the matter to the attention of the court, in her divorce bill, and asks that its custody be decreed to her, the control of the child is as truly placed with the court as is that of property attached in such a suit to secure alimony. We have, in the original opinion cited several cases from the State supreme courts holding that, where children are with the mother in the State where her bill is filed, the courts of that State have jurisdiction to make a decree concerning the custody of the chil-

dren. Counsel for the petitioner frankly admit they have not been able to find any cases to the contrary. There are many cases that hold the power does not exist where the children are not at the time within the State. The exception confirms the rule. In the California case, *De La Montanya* v. *De La Montanya*, 112 Cal., 101, 44 Pac., 345, 32 L. R. A., 82, 91, 53 Am. St. Rep., 165, cited in the petition, it appears the children were not within the jurisdiction when the decree of the lower court was pronounced, having been removed by their father, against whom personal service had not been obtained. The general observations made in that case by the judge delivering the opinion are without persuasive authority in the present controversy.

In conclusion we may add, as intimated in the original opinion, not only that the Alabama court acted for the best interests of the child, but we now hold, under the facts presented in this record, that it would not at this time be to the child's interest to deliver its custody to its father. It is less than two years old, is a girl, is in delicate health, and needs the care of its mother. We do not doubt the affection of the father, or forget his evident grief over having lost control of his child, but his claim to sympathetic consideration is much enfeebled by the fact that, while he had the opportunity of defending himself against the charges of cruelty made by his wife in her bill, having received a copy of the bill mailed to him, and having actually employed counsel in Birmingham

Kenner v. Kenner.

to watch the progress of the case, he would not defend himself, forbade his counsel to enter his appearance, and was content to shield himself behind the fact that he was not technically served within the State of Alabama, thus maneuvering for position or advantage in some future anticipated litigation.

But we have not treated the right he thus reserved as based on a barren technicality. We -recognize his privilege under the federal Constitution to so conduct his controversy with the lady who was then his wife. But giving him the benefit of every advantage he thus reserved, we are of the opinion that his claims put forward in the present litigation are without any foundation in law.

There is no merit in the petition, and it must be overruled.

NOTE.—See original opinion page 211 *et sequa supra.*  REPORTER.