

# THE ATTORNEY GENERAL

## OF TEXAS

### AUSTIN 11, TEXAS

WILL WILSON
ATTORNEY GENERAL

March 25, 1960

Mr. E. B. Camiade
State Parks Board
Austin, Texas

Opinion No. WW-821

Re: Under House Bill 11, Acts
of the 56th Legislature,
Third Called Session, 1959,
is the Texas State Parks
Board required to collect the
Hotel Occupancy Tax on rooms,
cabins and camping shelters
owned and operated by the
Parks Board.

Dear Mr. Camiade:

By your letter dated January 11, 1960, you request an
opinion on four questions relating to the application
of the Hotel Occupancy Tax to rooms, cabins and camping
shelters owned and operated by the State Parks Board.

In describing the subject accommodations, you state:

"The revenue derived from the charges
made for the use of said rooms, cabins and
camping shelters is deposited by the employee
of the Texas State Parks Board handling said
rentals in a local bank fund, called a Con-
cession Account. Out of said Concession
Account, the employee pays for all expenses
incurred in operating and maintaining said
rooms, cabins and camping shelters. The
Parks Board authorizes the employee to re-
tain 20% of the money left in the Concession
Account after paying all expenses of opera-
tion and maintenance, as compensation for
his work in handling said rentals. This
compensation is handled as wages, and is
reported accordingly for social security
and withholding tax purposes by the Texas
State Parks Board. The other 80% of the
money left in the Concession Account is
deposited in the State Treasury in the State
Parks Fund, and used for operation, maintenance
and repairs to the State Parks of Texas."

Your first question is whether the State Parks Board is
required to collect the Hotel Occupancy Tax.

The tax in question is imposed upon the occupant (except "permanent residents") of any building or buildings in which the public may, for a consideration, obtain sleeping accomodations where the cost of occupancy of the space furnished is at the rate of two dollars ($2.00) or more per day. See Art. 23.01 (a), Art. 23.02 (a) and Attorney General's Opinion No. WW-706 (September 21, 1959). Only hospitals, sanitariums, and nursing homes are excepted from the definition of "hotels." Every "person" owning, operating, managing or controlling a "hotel" is required to collect the tax and make remittance to the State. Arts. 23.03 and 23.04. "Person" is defined to mean any individual, company, corporation, or association owning, operating, managing or controlling any hotel.

The term "person" as extended to include "corporation" may include the State (thereby, obviously, including all State components or "functioning arms") where such an intention is manifest. The fact that a State is, in the generic sense, a corporation is a proposition having roots in judicial antiquity. Witness the following statement from Chisholm, Executor, v. Georgia, 1 U.S. (Curtis) 17, 36, 2 U.S. (Dall.) 419, 447 (1793):

> "The word 'corporation', in its largest sense, has a more extensive meaning than people generally are aware of. Any body politic, sole or aggregate, whether its powers be restricted or transcendent, is in this sense 'a corporation'. The king, accordingly, in England, is called a corporation. 10 Co. 29, b. So also, by a very respectable author (Sheppard, in his abridgement, (Vol. 431) is the parliament itself. In this extensive sense, not only each State singly, but even the United States may without impropriety be termed 'corporations'. I have, therefore, in contradistinction to this large and indefinite term, used the term 'subordinate corporations'; meaning to refer to such only (as alone capable of the slightest application, for the purpose of the objection) whose creation and whose powers are limited by law."

The United States Supreme Court has not departed from the foregoing interpretation. See Cotten v. United States, 11 How. 229, 231-232, 52 U.S. 229 (1850); Ohio v. Helvering, 292 U.S. 360 (1934); Georgia v. Evans, 316 U.S. 159 (1942); see also United States v. Cooper Corporation, et al., 312 U.S. 600 (1941); Stanley v. Schwalby, 147 U.S. 508 (1893); Helvering v. Stockholms Enskilda Bank, 293 U.S. 84 (1934); Far East

Conference v. United States, 342 U.S. 570 (1952); Respublica v. Sweers, 1 U.S. Dall. 41 (1779) and Helvering v. British-American Tobacco Company, Ltd., 69 F.2d 528 (C.C.A. 2nd Cir. 1934) aff'd. 293 U.S. 95. In Georgia v. Evans, supra, the wording of the definition of person was, insofar as pertinent, identical to the definition in issue. There the question was whether the State of Georgia was a "person" within the meaning of the Sherman Anti-Trust Act (26 State. 209, 210) for the purpose of instituting a civil action for treble damages. Section 8 of the act defined "person" as "corporations and associations existing under or authorized by the laws of any of the territories, the laws of any State, or the laws of any foreign country." The Court, speaking through Justice Frankfurter, pointed out that whether "person" includes a State or the United States depends upon its legislative environment, and that the following may be considered in construing the term: (1) the structure of the Act; (2) its legislative history; (3) the practice under it; (4) past judicial expressions. Applying these principles, the Court held that the State of Georgia was a "person" within the foregoing definition.

Other authorities less impressive than the Supreme Court have held that the State is a corporation. See Burke v. Railroad Retirement Board, 165 F.2d 24 (C.C.A., D.C. 1947) (in which it was held that the Allegheny County, Pennsylvania, Orphans Court was a person within the meaning of the Railroad Retirement Act (50 Stat. 309) because the context and purpose of the Act required the term, as extended to include "corporation," to include a governmental body); Isner v. Interstate Commerce Commission, 90 F.Supp. 361 (U.S.D.C., S.D. Mich. 1950) (in which the Court, relying on T. & P. Ry. Co. v. I.C.C., 162 U.S. 197; RRD. Labor Board, 258 U.S. 158, and Utah State Building Commission v. Great American Indemnity Co., 140 P.2d 763, held that the I.C.C. is a "corporation"); Indiana State Toll-Bridge Commission v. Minor, 132 N.E.2d 282 (1956) (in which it was held that the Toll-Bridge Commission, a body politic and corporate, was a corporation); and Indiana v. Woram, 40 Am.Dec. 378 (holding the State to be a "corporation" and a "person" within the meaning of the statute providing that all notes in writing and signed by any "person" are negotiable).

The case of United States v. Coumantaros, 165 F.Supp. 695 (U.S.D.C., Md. 1958) contains an exhaustive review of authorities on this subject. It is even pointed out, in a quote from Helvering v. Stockholms Enskilda Bank, supra, that Blackstone, the eminent authority on all matters pertaining to law, had this to say (1 Bl. 123):

"Persons are divided by the law into either natural persons, or artificial.

> Natural persons are such as the God of
> nature formed us; artificial are such as
> are created and devised by human laws for
> the purposes of society and government,
> which are called corporations or bodies
> politic." (Emphasis added.)

Based on its lengthy discussion, the Court concluded that the
United States is a "person" and "body corporate" within a
Maryland statute providing that every person and body corporate
that has the right to become a plaintiff in any action or
proceeding shall have the right to become a plaintiff in an
attachment against a non-resident. In so holding, the Court
makes the following statement which is particularly appropos
to the instant situation:

> "By analyzing those decisions holding that
> the sovereign is a person or body corporate,
> it may be found that one or more of the follow-
> ing factors are present and it may be con-
> cluded that their presence determines the
> reasonableness of such a construction of the
> statute in question and the manifestation of
> legislative intent to include the sovereign.
> Generally the sovereign entity involved is
> acting not in its sovereign capacity but
> rather is engaging in commercial and business
> transactions such as other persons, natural
> or artificial, are accustomed to conduct,
> usually in addition, when a statute is construed
> so as to include the sovereign within its terms,
> no impairment of sovereign powers results
> thereby and rights and remedies are given
> rather than taken away."

Analysis of the Hotel Occupancy Tax Act in light of the
foregoing principles makes it clear that the State is a "person"
required to collect the tax. In line with the reasoning in the
Coumantaros case, the State Parks Board is, in effect, given
a right or remedy (i.e., collection of the tax from the
occupant) in reference to an activity "such as other persons,
natural or artificial, are accustomed to conduct."[1] This
position is also fortified by reference to another extrinsic
aid to statutory interpretation, i.e., "past judicial expression."
(See discussion of Georgia v. Evans, supra.)

---

[1] Though the renting of cabins in this case may, perhaps, be a
non-profit activity, or designed to foster the esthetic, it
nevertheless is an enterprise that is commercial in nature.

Mr. E. B. Camiade, Page 5      Opinion No. WW-821

It is specifically noted that by the statute in question the tax is not imposed on the State itself, rather instead the State merely collects the tax from those occupying the sleeping accomodations. Your first question is answered in the affirmative.

Conditioned upon an affirmative answer to the first question, you ask:

"Does the tax apply to a room or cabin where the cost of occupancy for one person is less than two dollars ($2.00) per day, but for two or more persons is more than two dollars ($2.00) per day?"

The tax is imposed upon the total cost of occupancy of a rental unit, or "space", regardless of the number of people who pay for or take advantage of the privilege of occupancy. Consequently, where more than two dollars ($2.00) per day is charged for the same rental unit, the tax is due.

You next ask whether the tax applies "where group camp facilities (consisting of dormitory buildings, service buildings and showers, clothes washing equipment and sanitary facilities, combination dining hall and kitchen, recreation hall and administrative staff cottage) are rented to a group (that is not exempt under paragraph (c) of Art. 23.02 of said H.B. 11) at a charge of $35.00 a day for 50 persons."

Under the facts presented, it must be considered that the entire "group camp facility" is the rental unit furnished, since there is no indication that the rental price is divided according to the number of "rooms" or "spaces"; nor does there appear to be any separation of the charge for the buildings used for sleeping accomodations from charges made for service "buildings" or "dining" or "recreation" halls. Therefore, it appears that the tax is due upon the entire cost of occupancy. (On this point, attention is directed to Opinion No. WW-706, cited supra, and in particular to Questions and Answers Nos. 1, 2 and 5 therein).

The last question is whether the tax is to be collected on screened-in camping shelters where nothing is furnished, "not even a bed."

As pointed out above, a "hotel" is a building in which the public may for a consideration, obtain "sleeping accomodations". The term "sleeping accomodations" infers something more than a mere overhead covering; it appears that some sort of bed, cot, bunk, hammock, mattress, or at least a pallet, is required.

A person who receives none of these articles (or a sub-specie thereof) is not very well "accomodated" for sleeping. Therefore, this question is answered in the negative.

### S U M M A R Y

The Hotel Occupancy Tax is due on the cost of occupancy of rooms, cabins, camping shelters, and "group camping units" owned by the Texas State Parks Board where the price charged for such occupancy exceeds two dollars ($2.00) per day per individual rental unit. However, the tax is not due on screened-in camping shelters where nothing is furnished, "not even a bed."

Yours very truly,

WILL WILSON
Attorney General of Texas

By [signature] Jack N. Price
Jack N. Price
Assistant

JNP:cm

APPROVED:

OPINION COMMITTEE:
W. V. Geppert, Chairman

Richard Wells
Robert A. Rowland
Ray Loftin
Charles Cabaniss

REVIEWED FOR THE ATTORNEY GENERAL
By: Leonard Passmore